

**SIGNED THIS 29th day of September, 2020**

**THIS MEMORANDUM OPINION HAS BEEN ENTERED ON THE DOCKET. PLEASE SEE DOCKET FOR ENTRY DATE.**

Rebecca B. Connelly
UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **In re:** | **Chapter 12** |
| **MARY ELLEN ROSENBERGER,** | **Case No. 20-50093** |
|     Debtor. | |
| | |
| **TERESA GALE BAKER, DENNIS DALE BAKER, AND VICKIE LYNN BAKER RIGGLEMAN, AS EXECUTORS OF THE ESTATE OF FLOYD E. BAKER,** | |
|     Movants, | |
| | |
| v. | **ECF Doc. No. 52** |
| | |
| **MARY ELLEN ROSENBERGER,** | |
|     Debtor, | |
| | |
|     and | |
| | |
| **HERBERT L. BESKIN,** | |
|     Trustee, | |
|     Respondents. | |

## MEMORANDUM OPINION

The Court must determine whether the debtor, Ms. Mary Ellen Rosenberger, qualifies as a chapter 12 debtor under section 109(f) of the Bankruptcy Code. The only requirement in dispute is whether Ms. Rosenberger satisfies section 101(18)'s statutory definition of "family farmer." For

the reasons explained below, the Court concludes that Ms. Rosenberger is a "family famer," and is therefore an eligible chapter 12 debtor.

## Background

Ms. Rosenberger filed an individual voluntary petition under chapter 12 of the Bankruptcy Code on February 5, 2020. Ms. Rosenberger scheduled a 50% ownership interest in a joint farming venture with a related debtor in this Court, Mr. Gregory Hamman. *See* Schedule A/B, at 5, ECF Doc. No. 15. Ms. Rosenberger claims her participation in the joint farming operation renders her eligible for chapter 12 under section 109(f) of the Bankruptcy Code. The Estate of Floyd E. Baker (the Baker Estate), however, disputes Ms. Rosenberger's eligibility for chapter 12.

On June 12, 2020, the Baker Estate filed a motion to dismiss Ms. Rosenberger's chapter 12 case, contending that "she is not a 'Family Farmer' . . . nor is she a 'farmer'" as defined by the Bankruptcy Code and thus is not eligible to be a debtor under chapter 12. *See* ECF Doc. No. 52. Because she is not an eligible chapter 12 debtor, according to the Baker Estate, the Court must dismiss Ms. Rosenberger's case. Ms. Rosenberger filed an answer to the motion to dismiss denying the assertions in the Baker Estate's motion to dismiss; she filed an amended answer subsequently to correct the statutory references in her answer. *See* ECF Doc. Nos. 57, 66. The Court held a hearing on August 5, 2020, at which the Baker Estate's counsel clarified that the Baker Estate's sole contention is that Ms. Rosenberger is not a "family farmer" under section 101(18) of the Bankruptcy Code. The Baker Estate's position that Ms. Rosenberger is not a "family farmer" as defined by section 101(18) is two-fold: first, she, as a factual matter, was not "engaged in" a farming operation on the date of filing, and second, even if she was "engaged in" a farming operation, she did not derive at least 50 percent of her income from the farming operation in the prior taxable year, nor the two taxable years preceding the prior taxable year.

At the August 5, 2020, hearing, the Court allowed the parties to present evidence on the issue of Ms. Rosenberger's eligibility for chapter 12 bankruptcy. Counsel for Ms. Rosenberger presented evidence in the form of Ms. Rosenberger's testimony and her 2019 federal income tax return. Both parties presented arguments to the Court regarding Ms. Rosenberger's eligibility. After the hearing, the Court took the matter under advisement.

## Discussion

The question of a debtor's eligibility to file a bankruptcy petition under a certain chapter of the Bankruptcy Code falls within this Court's jurisdiction as delegated to it by the United States District Court for the Western District of Virginia pursuant to 28 U.S.C. §§ 1334(a) and 157(a). In determining this debtor's eligibility, the Court must resolve two issues: (1) whether Ms. Rosenberger was "engaged in" a farming operation, and (2) whether Ms. Rosenberger derived at least 50 percent of her gross income in 2019 from her farming operation.

Section 101(18), in pertinent part, provides:

> The term "family farmer" means—
> (A) individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $10,000,000 and not less than 50 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for—
> (i) the taxable year preceding; or
> (ii) each of the 2d and 3d taxable years preceding the taxable year in which the case concerning such individual or such individual and spouse was filed . . . .

11 U.S.C. § 101(18).

The parties agree that the underlying operation qualifies as a "farming operation." Therefore, resolving the first issue requires the Court to make a finding of fact, based on the

evidence presented, only as to Ms. Rosenberger's engagement in the operation. The second issue is a question of law for the Court, requiring the Court to decide which figures in the debtor's 2019 federal income tax return are included in "gross income" as contemplated by section 101(18).

*A. The Debtor Was "Engaged in" a Farming Operation at the Time of Filing*

The requirement that the debtor be "engaged in" a farming operation raises two issues for interpretation—the first, a temporal question, and the second, a substantive question. Specifically, the Court must resolve both when the debtor must be engaged in a farming operation for eligibility for chapter 12 bankruptcy and what constitutes an individual's engagement in a farming operation.

The parties do not spar over whether Ms. Rosenberger must be continuously engaged in a farming operation throughout the chapter 12 bankruptcy. The Court will therefore only address the issue briefly. The test for eligibility is determined at the time the case is filed. *In re Clark*, 288 B.R. 237, 246 (Bankr. D. Kan. 2003). The debtor need only be "engaged in" a farming operation when she filed her bankruptcy petition. *See, e.g.*, *id.* at 246–47; *In re Nelson*, 291 B.R. 861, 867–68 (Bankr. D. Idaho 2003); *In re Lockard*, 234 B.R. 484, 491 (Bankr. W.D. Mo. 1999). Ms. Rosenberger, therefore, must show she was engaged in a farming operation at the time she filed her petition.

The question of what constitutes an individual's *engagement* in a farming operation is central to resolving the Baker Estate's motion to dismiss. Rather than considering whether the underlying operation is actually a "farming operation," the Court must decide to what extent a qualifying "family farmer" must be involved in what has already been established as a "farming operation." Many courts have had the occasion to consider what constitutes a "farming operation," but few have considered what satisfies the Code's requirement that the debtor be "engaged in" the operation. Most courts addressing whether a debtor is "engaged in a farming operation" tend to

focus on whether a particular activity is a "farming operation," and in doing so the courts apply a "totality of the circumstances" approach. *See In re Paul*, 83 B.R. 709, 712 (Bankr. D.N.D. 1988) ("The majority of courts to consider the question [of whether an activity constitutes a farming operation] have adopted this 'totality of the circumstances' test."). The totality of the circumstances approach for determining whether a particular operation is a "farming operation" considers the relevant facts case-by-case, with a view to seven common, but non-exclusive, factors:

> 1. Whether the location of the operation would be considered a traditional farm;
> 2. The nature of the enterprise at the location;
> 3. The type of product and its eventual market...;
> 4. The physical presence or absence of family members on the farm;
> 5. Ownership of traditional farm assets;
> 6. Whether the debtor is involved in the process of growing or developing crops or livestock; and
> 7. . . . [W]hether or not the practice or operation is subject to the inherent risks of farming.

*In re Osborne*, 323 B.R. 489, 494 (Bankr. D. Or. 2005) (quoting *In re Sugar Pine Ranch*, 100 B.R. 28, 31 (Bankr. D. Or. 1989)).

In *Cottonport Bank v. Dichiara*, 193 B.R. 798 (W.D. La. 1996), the court noted that the "engagement in" analysis is somewhat separate from the "farming operation" analysis, but the totality of the circumstances test remains instructive. *Id.* at 802. This Court agrees. The Court will look to the totality of the circumstances to determine whether a debtor is "engaged in" a farming operation. The factors most relevant to the "engagement in" inquiry are: (1) the debtor's daily involvement on the farm, (2) the debtor's legal ownership interest in the farming operation and/or its assets, and (3) the debtor's physical presence on the farm.

The debtor bears the burden of proving her eligibility for relief under a certain chapter of bankruptcy. *See, e.g.*, *In re Carter*, 570 B.R. 500, 508 (Bankr. M.D.N.C. 2017) ("[F]or the Debtor

to qualify as a family farmer so as to be eligible for Chapter 12 relief pursuant to § 109(f), the Debtor must meet all five elements of § 101(18)(A), and courts have uniformly held that the burden rests with the Debtor in evidencing eligibility."); *In re Ollis*, 609 B.R. 459, 464 (Bankr. D.S.C. 2019); *see also Tim Wargo & Sons, Inc. v. Equitable Life Assurance Soc'y of the U.S. (In re Tim Wargo & Sons, Inc.)*, 869 F.2d 1128, 1130 (8th Cir. 1989). She must put forward sufficient evidence to allow the Court to find that she satisfies the section 109(f) eligibility requirements, including the definitional section 101(18) requirement that she was "engaged in" a farming operation at the time of filing.

At the hearing, the debtor presented evidence to show that she was engaged in a farming operation at the time of filing. Specifically, the debtor testified to her involvement in the farming operation that she operated as a joint venture with a related debtor, Mr. Hamman. She testified to the existence of an understanding between the two that Ms. Rosenberger and Mr. Hamman held an equal interest in the venture. She testified to her physical involvement on the farm, including tending to sick cows, feeding calves, and assisting in the cows' transportation to sale. She further testified to her involvement on the business-management side of the operation, including maintaining the books and preparing tax returns based on the operation's income. She also expressed a working knowledge of the farming operation's day-to-day procedures and the general cattle market. In sum, she articulated knowledge of the farming operation, which seemed to come from years of involvement in the farming operation. The Court finds Ms. Rosenberger's testimony credible in establishing that she was actively involved in the operation, both in managing the business elements and assisting in the farming activities, at the time she filed her chapter 12 petition.

In addition to Ms. Rosenberger's testimony of her involvement on the farm, she offered evidence showing that she acted in a way consistent with the actions that one invested in the farming operation's success would act.  She testified that she often obtained cash advances on her personal credit cards, obtained a second deed of trust on her house, and co-signed a debt to purchase a truck, all to assist the farming operation.  These actions further illustrate her certain dedication to the farming operation.  Beyond her physical involvement and personal investments, Ms. Rosenberger lived on the farm property.[1]  Indeed, Ms. Rosenberger scheduled a 100% fee simple interest in the home and real property on which the farming operation is located.  *See* Schedule A/B, at 1, ECF Doc. No. 15.

To be sure, the Court recognizes that Ms. Rosenberger acknowledged during cross-examination that she does not claim to hold a legal interest in the cattle located on the farm, the sale of which constitutes the operation's primary revenue generator.  While Ms. Rosenberger's ownership of the farming assets is a consideration in determining her engagement in the farming operation, the ownership—or lack thereof—of such assets is not dispositive.  "Section 101(18) does not require debtors to only use assets belonging to them; instead the debtors only have to be 'engaged in a farming operation' as long as the other requirements for a family farmer are met." *In re Howard*, 212 B.R. 864, 873 (Bankr. E.D. Tenn. 1997); *see also In re Voelker*, 123 B.R. 749 (Bankr. E.D. Mich. 1990).

The Baker Estate also noted that Ms. Rosenberger had not reported income from the farming operation on her federal income tax return until this most recent tax year (2019).  Ms. Rosenberger explained that she prepared her personal tax returns and Mr. Hamman's personal tax

---

[1] Ms. Rosenberger's chapter 12 petition lists 1827 Belgravia Road, Edinburg, VA 22824 as her place of residence.  *See* ECF Doc. No. 1.  At the hearing, Ms. Rosenberger testified that the farming operation is located at that same address.  *See* Transcript, at 19, ECF Doc. No. 75.

returns. At the outset of the farming venture, Ms. Rosenberger testified, she reported half of the farming operation's income on her personal income tax returns. She acknowledged that she stopped reporting the farm income on her personal tax returns "for a couple years," including tax years 2017 and 2018, and during those years Mr. Hamman claimed the entire farming operation's income on his tax return.[2] *See* Transcript, at 29–30, ECF Doc. No. 75. She explained that

> it was easier just to put it all on his tax return and be done with it and that way I didn't have to divide everything into half and figure all that up. And if I didn't have the farming income on mine then I had more of a chance of getting my federal taxes I had paid in back on a refund so that's why I did that . . . .

*Id.* at 18–19.

According to Ms. Rosenberger, her primary motivation for not reporting her share of the income over the years was to obtain a better tax refund for herself. Then in 2020, when she filed her tax return for 2019—a taxable year essential to her eligibility for chapter 12 bankruptcy—Ms. Rosenberger did report as her income half of the farming operation's gross income. Although her inconsistency in reporting her income on her tax returns is concerning, her conduct alone does not prove the tax return for 2019 is inaccurate, even if it is inconsistent with prior years' returns, nor does it disprove her "engagement in" the farming operation.

On balance, the Court finds that the debtor has put forth sufficient evidence to indicate that, in view of the totality of the circumstances, Ms. Rosenberger was engaged in farming operations as required by the Bankruptcy Code. Her testimony and evidence establish that she invested her time, effort, and money into the venture. Despite a lack of legal ownership of some of the farming assets and a history of unreported income on her federal tax returns, Ms. Rosenberger lived at the

---

[2]  Apparently the farming operation operated at a loss, so it is unclear whether the tax liability on the farm income would have differed had the income been reported entirely on one tax return for one member of the joint venture or half on each of two tax returns for the members of the joint venture.

farm and performed substantive duties for the farming operation. Ms. Rosenberger falls within the class of individuals to whom Congress sought to extend chapter 12 relief: family farmers.

*B. The Debtor Received More than 50 Percent of Her 2019 Gross Income from the Farming Operation*

Secondly, the Baker Estate asserts that even if the Court finds that Ms. Rosenberger was "engaged in" a farming operation, she does not satisfy the requirement of section 101(18)(A) that she derived at least 50 percent of her gross income in the year prior to filing her petition, or each of the second and third years prior to filing her petition, from a farming operation.

The debtor, through counsel, submitted, and the Court admitted as Exhibit A, her federal income tax return for taxable year 2019[3] as evidence that she satisfied the 50 percent income test contemplated by section 101(18)(A)(i). The Baker Estate contends that the tax return indicates the opposite: that the debtor received less than 50 percent of her gross income in 2019 from her farming operation. The ultimate issue is not over the facts—whether the 2019 tax return was filed or whether the numbers are correct—but over the legal question of the proper calculation of "gross income" as contemplated by section 101(18). More specifically, the issue is whether Social Security income is included in "gross income."

Ms. Rosenberger testified that the federal income tax return admitted into evidence is an exact copy of the one filed with the Internal Revenue Service for taxable year 2019. In filing her 2019 federal income tax return with the Internal Revenue Service, Ms. Rosenberger swore to the accuracy of the figures reported under penalties of perjury. Because section 101(18)(A)(i) provides that a Court may consider the income for the preceding taxable year, the Court may consider the 2019 tax return, and absent evidence to the contrary, find it establishes the debtor's income for that year. The evidence before the Court does not call into question the figures reported

---

[3]     Because the case was filed in 2020, the taxable year at issue is 2019. *See* 11 U.S.C. 101(18)(A)(i).

on the debtor's 2019 tax return, including the amount of income reported from the farming operation.

On the tax return, she reports one-half of the income of the farming operation. The tax return reports gross income from multiple sources, including $14,286 in Social Security benefits. The non-farm gross income reported on the tax return adds up to $38,226 including the Social Security income. The farm income totals $31,602. Comparing these figures reveals that less than half of the gross income is from the farming operation. On the other hand, if the Social Security income is not included in the calculation of "gross income" for purposes of section 101(18), the income from the farming operation is greater than 50 percent.

The Bankruptcy Code itself does not define "gross income" for purposes of section 101(18), leaving courts to interpret the term. Many courts have looked to the Tax Code's definition of gross income to inform the Bankruptcy Code's definition. Only one court in the Fourth Circuit, to date, has issued an opinion discussing the application of the Tax Code's definition of "gross income" to the Bankruptcy Code. *See In re Sandifer*, 448 B.R. 382 (Bankr. D.S.C. 2011). The *Sandifer* court held that the Tax Code may inform the Bankruptcy Code's definition of "gross income," but only to the extent that strict adherence to the Tax Code's definition would not unreasonably hinder the purposes of chapter 12. *Id.* at 386–87.

Consistent with the *Sandifer* ruling is a ruling from the district court for the Central District of California holding the Tax Code's definition of "gross income" will guide in calculating "gross income" under section 101(18) of the Bankruptcy Code, except when strict adherence to the Tax Code "would lead to absurd results." *Fuentes v. Danielson (In re Fuentes)*, Case No. 5:10-cv-01419-DDP, 2011 WL 6294489, at *2 (C.D. Cal. Dec. 16, 2011). The *Fuentes* court considered the specific question pending before this Court now: whether Social Security income is included

in "gross income" under section 101(18). *Id.* As set out below, this Court follows the *Fuentes* court's holding that Social Security income is only included in "gross income" to the extent provided by the Tax Code. *Id.* at *3. The *Fuentes* court came to this conclusion by looking to section 86 of the Tax Code, the application of which the court determined did not hinder Congress' intent nor lead to absurd results. *Id.*

This Court is satisfied that the application of Bankruptcy Code section 101(18) articulated by *Sandifer* and *Fuentes* is consistent with the language of Bankruptcy Code section 101(18). In the absence of a statutory definition otherwise, this Court will look to the Tax Code's definition of "gross income" to guide the calculation of "gross income" in section 101(18).

The Tax Code defines gross income broadly as "all income from whatever source derived," except as excluded by other sections of the Tax Code. 26 U.S.C. § 61. Section 86 of the Tax Code provides specifically for the proper inclusion of Social Security income in "gross income." Section 86 of the Tax Code dictates that a portion of the taxpayer's Social Security benefits is included in the taxpayer's "gross income," only if one-half of the Social Security benefits plus the taxpayer's "modified adjusted gross income" exceeds the "base amount." 26 U.S.C. § 86(b)(1). The "base amount" in the case of an individual like Ms. Rosenberger equals $25,000. *See* 26 U.S.C. § 86(c)(1). The taxpayer's "modified adjusted gross income" equals the debtor's adjusted gross income with certain above-the-line deductions—none of which did Ms. Rosenberger take in 2019—added back in. *See* 26 U.S.C. § 86(b)(2).

The debtor's 2019 federal individual tax return reveals the following details. Line 8b of Ms. Rosenberger's 2019 federal individual tax return (Form 1040) shows an adjusted gross income of $17,260. Because Ms. Rosenberger did not claim certain above-the-line deductions, her modified adjusted gross income is the same as her adjusted gross income: $17,260. Line 5a of Ms.

Rosenberger's 2019 Form 1040 shows that she received $14,286 in Social Security benefits, one-half of which is $7,143.  Adding one-half of Ms. Rosenberger's 2019 Social Security income ($7,143) to her modified adjusted gross income ($17,260) produces a sum of $24,403.  Because this sum falls under $25,000, section 86 of the Tax Code dictates that none of Ms. Rosenberger's Social Security income is included in her "gross income" for 2019.

Given that the Tax Code definition would exclude Ms. Rosenberger's Social Security income from her "gross income" in taxable year 2019, she satisfies the 50 percent income test required by section 101(18) of the Bankruptcy Code.  Her non-farm gross income, not taking into account her receipt of Social Security income, amounts to $23,940.[4]  Ms. Rosenberger's Schedule F, attached to her 2019 1040, shows that her share of the farming operation's gross income amounted to $31,602.  Her $31,602 in farming income exceeds her $23,940 non-farm income.  Therefore, she satisfies the 50 percent income in the prior taxable year test laid out by section 101(18)(A)(i) of the Bankruptcy Code.

**Conclusion**

In sum, this Court finds that Ms. Rosenberger produced sufficient evidence to overcome the Baker Estate's arguments against her eligibility for chapter 12.  In addition to satisfying the other requirements of section 101(18) of the Bankruptcy Code, as stipulated, Ms. Rosenberger was engaged in a farming operation at the time of filing and received at least 50 percent of her gross income in 2019 from the farming operation.  The Court therefore **DENIES** the movant's motion to dismiss.

---

[4]    This gross income amount is based on Ms. Rosenberger's 2019 tax return and includes $15,892 in wages, $37 in taxable interest, $211 in dividends, and $7,800 in taxable IRA distributions.  *See* Ex. A, at 1, ECF Doc. No. 65; *see also* 26 U.S.C. § 61 ("[G]ross income means all income from whatever source derived . . . .").

The Court will contemporaneously issue an Order consistent with the findings and rulings of this Memorandum Opinion.

The clerk is directed to send a copy of this Memorandum Opinion to the debtor; debtor's counsel; the chapter 12 trustee; and counsel for the movants.